397 So.2d 665 (1981)
Scott McPHERSON, Petitioner,
v.
Bill FLYNN, Respondent.
No. 60435.
Supreme Court of Florida.
April 14, 1981.
*666 Gregory F. Esposito, Jr. of Koppen & Watkins, Miami, for petitioner.
Donald D. Slesnick, II and Joel V. Lumer, Miami, for respondent.
SUNDBERG, Chief Justice.
The District Court of Appeal, Third District, certifies that the order of the Circuit Court for the Eleventh Judicial Circuit in Flynn v. McPherson, dated February 24, 1981, is a matter of great public importance requiring an immediate resolution by the Supreme Court of Florida. We accept jurisdiction of this cause pursuant to article V, section 3(b)(5), Florida Constitution.
Petitioner Scott McPherson defeated respondent Bill Flynn in the November 4, 1980, general election for the office of State Representative, District 117. McPherson was certified shortly thereafter by the appropriate canvassing board as the winner of the District 117 election. Flynn then filed suit in circuit court, seeking a judicial determination that he is entitled to the legislative seat because McPherson had been unqualified to run for office. Due to the failure to name proper parties, the circuit court dismissed Flynn's complaint but granted time to amend. The amended complaint, dated December 18, 1980, realleged the essential elements of the original complaint. McPherson responded with a motion to dismiss the amended complaint, arguing that Flynn had failed to state a cause of action and that the court lacked jurisdiction over the subject matter of the dispute. The circuit court denied the motion to dismiss on February 24, 1981, and ordered McPherson to answer the amended complaint within fifteen days.[1] McPherson then filed a petition for writ of certiorari in the district court to review the trial court's denial of the motion to dismiss, and in turn the cause was certified to us by the district court.
This dispute arises from respondent's basic allegation in his complaint that petitioner filed a false candidate oath. The oath was false, respondent asserts, because as a part of that oath petitioner swore that he was qualified to hold the office of State Representative for District 117, which he was not because he was neither a resident nor a qualified elector from District 117. Thus by filing the false oath, petitioner misled the voters in their election choice. Respondent grounds his cause of action *667 in sections 102.168 and 102.1682, Florida Statutes (1979),[2] relating to election contests and judgments of ouster. He also seems to assert that there is inherent judicial authority or common law authority to protect against election fraud. Petitioner counters that pursuant to article III, section 2, Florida Constitution,[3] the House of Representatives is the sole judge of its members' qualifications, hence the judiciary has no jurisdiction over this dispute. Further, petitioner argues that an election contest under chapter 102 deals only with the actual marking and counting of ballots, not with candidate qualifications.
For purposes of our analysis, we restate the issue to be decided:
whether the courts of this state have jurisdiction to inquire into a person's qualifications to hold office, when that person has already been duly elected and has taken office as State Representative?
For the following reasons we answer this question in the negative.
Generally, there is no inherent power in the courts of this state to determine election contests and the right to hold legislative office. The courts in this state are without jurisdiction to determine the right of one who has been elected to legislative office. English v. Bryant, 152 So.2d 167 (Fla. 1963); State ex rel. Rigby v. Junkin, 146 Fla. 347, 1 So.2d 177 (1941). At common law, except for limited application of quo warranto, there was no right to contest in court any public election, because such a contest is political in nature and therefore outside the judicial power. See Hubbard v. Ammerman, 465 F.2d 1169, 1176 (5th Cir.1972), cert. denied, 410 U.S. 910, 93 S.Ct. 967, 35 L.Ed.2d 272 (1973); 26 Am.Jur.2d, Elections, §§ 328-29 (2d ed. 1966).
As the United States Supreme Court has pointed out under the parallel articles of the federal constitution, the doctrine of separation of powers requires that the judiciary refrain from deciding a matter that is committed to a coordinate branch of government by the demonstrable text of the constitution. See Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Such is the case here. Article III, section 2, Florida Constitution, makes each house the sole judge of its members' qualifications, a stronger mandate than the federal constitution.[4] Article III, section 15(c) establishes the standing qualifications for a legislator, who must be "an elector and resident of the *668 district from which elected." The constitution grants the sole power to judge these qualifications to the legislature in unequivocal terms. The courts of this state, therefore, have no jurisdiction to determine these constitutional qualifications.
Cases from other jurisdictions have confronted practically identical challenges to the residency requirements of an elected legislator and have uniformly refused jurisdiction. In Buskey v. Amos, 294 Ala. 1, 310 So.2d 468 (1975), the Supreme Court of Alabama faced a strikingly similar challenge by an unsuccessful candidate to the residency qualifications of his elected opponent. Even though the challenge commenced prior to the election, the court found itself without jurisdiction since the elected legislator had begun his term. See also In re McGee, 36 Cal.2d 592, 226 P.2d 1 (1951); State ex rel. Turner v. Scott, 269 N.W.2d 828 (Iowa 1978). These cases each find that constitutional provisions similar to Florida's confer exclusive jurisdiction on the legislature to judge residency qualifications of its members.
Respondent asserts that in spite of this exclusive power of the legislature to judge members' qualifications, the courts of Florida should accept jurisdiction to judge eligibility to run as a candidate, relying on State ex rel. Fair v. Adams, 139 So.2d 879 (Fla. 1962). Adams is factually quite different from the present case, and is therefore inapposite. Furthermore, we fail to see the jurisdictional or constitutional significance in distinguishing between eligibility for candidacy and qualifications for office. Other courts agree with our position. See Reaves v. Jones, 257 Ark. 210, 515 S.W.2d 201 (1974); Rainey v. Taylor, 166 Ga. 476, 143 S.E. 383 (1928). In brief, candidacy is an integral part of the election process. See In re McGee. The litigation in this case unavoidably involves a nonjusticiable political question and is properly left to the prerogative of the legislature.
That the original complaint may have been filed prior to the actual seating of the petitioner is of no consequence. The issue of qualifications is nonetheless within the purview of legislative powers. Article III, section 15(d) provides that the term of legislative office shall begin upon election. It is undisputed that the petitioner is presently seated in the House. We need not determine whether the courts of Florida ever had jurisdiction; we need only determine they do not now have jurisdiction.
The respondent also relies on the statutory provisions to contest elections. See §§ 102.168, 102.1682 Fla. Stat. (1979). Since there is no common law right to contest elections, any statutory grant must necessarily be construed to grant only such rights as are explicitly set out. See Pearson v. Taylor, 159 Fla. 775, 32 So.2d 826 (1947). The statutory election contest has been interpreted as referring only to consideration of the balloting and counting process. State ex rel. Peacock v. Latham, 125 Fla. 69, 169 So. 597 (1936); Farmer v. Carson, 110 Fla. 245, 148 So. 557 (1933). The balloting process is distinct from the legal qualifications of the candidates, and we can find no authority for extending an election contest to areas outside the balloting process. See State ex rel. Gandy v. Page, 125 Fla. 453, 170 So. 118 (1936). Additionally, section 102.168 is limited, under these circumstances, to contesting the "certification of election." Section 102.151, Florida Statutes (1979), makes clear that this certificate concerns the number of votes, by stating, "The county canvassing board shall make and sign triplicate certificates containing the total number of votes cast for each person... ." We can therefore find no right of respondent to attack the petitioner's residency qualifications under statutory sections providing for contest of elections.
Respondent has demonstrated no constitutional, common law, or statutory right to support a judicial challenge to petitioner's qualifications. Accordingly, the petition for writ of certiorari filed with the Third District Court of Appeal and transferred to this Court under article V, section 3(b)(5) is granted, and the trial court's order denying petitioner's motion to dismiss is reversed.
It is so ordered.
*669 ADKINS, BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] The parties' recitation of facts in this case is exceedingly unclear, but it appears that the trial judge originally assigned to this case issued an order denying McPherson's motion to dismiss on December 15, 1980. Shortly thereafter, the trial judge was appointed to the district court of appeal, and this case was reassigned to Judge Nadler. The parties make too much of the issue whether Judge Nadler was bound by the prior rulings of the trial court. Suffice it to say that Judge Nadler entertained the same motion to dismiss previously filed, and he denied the motion as had the original judge.
[2] Sections 102.168 and 102.1682 read:

102.168 Contest of election.  The certification of election or nomination of any person to office, or of the result on any question submitted by referendum, may be contested in the circuit court by any unsuccessful candidate for such office or nomination thereto, or by any taxpayer, respectively. Such contestant shall file a complaint, together with the fees prescribed in chapter 28, with the Clerk of the Circuit Court within 10 days after midnight of the date the last county canvassing board empowered to canvass the returns adjourns, and the complaint shall set forth the grounds on which the contestant intends to establish his right to such office or set aside the result of the election on a submitted referendum. The canvassing board or election board shall be the proper party defendant, and the successful candidate shall be an indispensable party to any action brought to contest the election or nomination of a candidate.
102.1682 Judgment of ouster; revocation of commission; judgment setting aside referendum. 
(1) If the contestant is found to be entitled to the office, if on the findings a judgment to that effect is entered, and if the adverse party has been commissioned or has entered upon the duties thereof or is holding the office, then a judgment of ouster shall be entered against such party. Upon presentation of a certified copy of the judgment of ouster to the Governor, the Governor shall revoke such commission and commission the person found in the judgment to be entitled to the office.
(2) If a judgment is entered setting aside a referendum, the election shall be void.
[3] Article III, section 2, Florida Constitution reads:

SECTION 2. Members; officers.  Each house shall be the sole judge of the qualifications, elections, and returns of its members, ... .
[4] "Each House shall be the judge of the elections, returns and qualifications of its own members... ." U.S. Const., art. I, § 5, cl. 1.