483 So.2d 409 (1985)
Robert HARDEN, Appellant,
v.
Elsie GARRETT, et al., Appellees.
No. 67531.
Supreme Court of Florida.
December 20, 1985.
Rehearing Denied March 12, 1986.
Stephen Marc Slepin and George L. Waas, of Slepin, Slepin and Waas, Tallahassee, for appellant.
John H. French, Jr., of Messer, Vickers, Caparello, French and Madsen, Tallahassee, for appellees.
ADKINS, Justice.
In its final order of Harden v. Garrett, dated July 17, 1985, the Leon County Circuit Court reversed its previous order and held that the courts lack jurisdiction to hear statutory election contests as applied to legislative elections. Upon appeal the First District Court of Appeal, without resolving the issues, certified this case to us *410 as being one of great public importance, requiring immediate resolution. We have jurisdiction. Art. V, § 3(b)(5), Fla. Const.; Rule 9.125, Fla.R.App.P.
After appellee James Ward was voted into the District 5 seat of Florida's House of Representatives on November 6, 1984, appellant Robert Harden challenged in the circuit court the validity and conduct of the election under sections 102.166 and 102.168, Florida Statutes (1983). Although Ward had ostensibly won by a margin of 39 votes, appellant established an election which the circuit court judge found "botched," and "fraught with manifest election law irregularities." While it is not entirely clear that the outcome would have been reversed in a properly conducted election, the established irregularities were sufficiently serious to cast doubt upon the legitimacy of the result.
It is clear, then, that appellant has established an injury, both to himself and to the voters at large. The sole question before this Court is whether appellant appropriately sought redress of his grievance in the courts. Noting that the House of Representatives, in its internal rule 5.5, provides a mechanism for contesting the election of its members, we hold that a proper respect of the constitutionally mandated separation of powers requires us to honor the language of article III, section 2, Florida Constitution, providing that "[e]ach house shall be the sole judge of the qualifications, elections and returns of its members." Finding no jurisdiction over appellant's claim, we affirm the circuit court's dismissal of his complaint.
The instant question is not a simple one, as it rests at the point of convergence of several strong and conflicting policies. While it is particularly and finally the duty of the courts to maintain and safeguard the proper tension between the constitutionally separate powers, article II, section 3, Florida Constitution, Dade County Classroom Teachers Assoc., Inc. v. Legislature, 269 So.2d 684 (Fla. 1972); Pepper v. Pepper, 66 So.2d 280 (Fla. 1953), we must note that the equally honored access to courts policy, article I, section 21, Florida Constitution, Carter v. Sparkman, 335 So.2d 802 (Fla. 1976); Kluger v. White, 281 So.2d 1 (Fla. 1973); G.B.B. Investments, Inc. v. Hinterkopf, 343 So.2d 899 (Fla.3d DCA 1977); Lehmann v. Cloniger, 294 So.2d 344 (Fla. 1st DCA 1974), and the fundamentality of the right to have one's vote counted in a fair election, Treiman v. Malmquist, 342 So.2d 972 (Fla. 1972); MacBride v. Askew, 541 F.2d 465 (5th Cir.1976), might militate towards a finding that Florida's courts are possessed of jurisdiction to right the wrong which has been done in this case.
We find, however, that both of the latter concerns are alleviated by the existence of another, more appropriate forum. Pursuant to its constitutionally exclusive power to "judge ... the elections ... of its members," the House has enacted Rule 5.5, which provides:
5.5  Contested Seat.  In cases of contest for a seat in the House, notice setting forth the grounds of such contest shall be given by the contestant to the House within three calendar days after the House first convenes, and in such case, the contest shall be determined by majority vote as speedily as reasonably possible.
Appellant argues that his plea may not adequately be entrusted by the courts to the legislature's "transient majority." We flatly disagree. If the principle of separation of powers is to be given any meaning or vitality whatsoever, it must mean that each of the branches of government, co-equal in constitutional dignity, can trust the others to perform their assigned functions properly and conscientiously. Those legislators who would judge appellant's claim, regardless of political partisanship, well understand the essentiality of a fairly conducted election.
An analysis of Florida's constitution and its caselaw makes clear that any exercise of judicial power in this situation would to that extent invade the legislative domain and usurp that power which has been constitutionally invested in that branch. Section 2 of article III, as a starting point, *411 indicates that each house of Florida's legislature is to be the "sole judge of the qualifications, elections, and returns of its members."
A brief survey of the evolution of this provision leaves little doubt that the power of review appellant would have us exercise rests exclusively in the legislature's hands. The present article III, section 2, originated in article IV, section 7, of the 1838 Florida Constitution, which provided in relevant part that:
[E]ach House shall be judge of the qualifications, elections and returns of its members; but a contested election, shall be determined in such manner, as shall be directed by law.
The framers of the original constitution apparently contemplated a delegation to coordinate branches of government of the authority to determine legislative election contests. While the above provision was carried forward in the Florida Constitutions of 1861 and 1865, a conspicuous change is noted in the constitution of 1868, carried forth verbatim to the 1885 version.
Article IV, section 6, read in pertinent part:
Each house shall judge of the qualifications, elections, and returns of its own members... .
The deletion by the drafters of the 1868 and 1885 constitutions of the phrase allowing the legislature to delegate its authority to judge "election contests" cannot fairly be interpreted as an inadvertent act or omission. Rather, the deletion represents an attempt to further solidify the proper separation of powers and place finally and exclusively within the legislature's hands the power to police itself.
The addition of a single word in the 1968 revision of the 1885 constitution additionally emphasizes a shift from the earlier delegation of power concerning legislative election contests. The present provision that each house be the sole judge of its members' elections indicates beyond doubt that the framers of the present constitution intended the courts to defer to legislative resolution of the problems within that branch.
We note, however, that we intend to build no impenetrable wall between legislative action and judicial review with this opinion. Proper allocation of the separation of powers requires a dynamic and ongoing analysis. We do not decide today that the legislature can by no means act in such a fashion as to impermissibly violate one's independent constitutional rights. See Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966). We hold only that absent a more specific legislative authorization than the mere existence of general statutory "election contest" provisions, these statutes cannot be applied so as to bestow upon the courts jurisdiction over legislative election contests.
Such a result is amply supported by Florida's caselaw. First, we reiterate our previous holding that "there is no inherent power in the courts of this state to determine election contests and the right to hold legislative office." McPherson v. Flynn, 397 So.2d 665, 667 (Fla. 1981). Recognizing the potentially intrusive and unbalancing impact of a judicial inquiry into the legislative processes, the courts have held themselves without jurisdiction to evaluate legislator's qualifications. McPherson; English v. Bryant, 152 So.2d 167 (Fla. 1963); State ex rel. Rigby v. Junkin, 146 Fla. 347, 1 So.2d 177 (1941). We find no principled basis for distinguishing "qualifications" from the constitutionally co-equal terms of "elections" and "returns", and disallowing judicial inquiry only into the first.
The reasoning embraced by this Court in McPherson with regard to judicial jurisdiction over legislative "qualifications" applies with equal force to the instant question:
As the United States Supreme Court has pointed out under the parallel articles of the federal constitution, the doctrine of separation of powers requires that the judiciary refrain from deciding a matter that is committed to a coordinate branch of government by the demonstrable text of the constitution. See Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, *412 23 L.Ed.2d 491 (1969); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Such is the case here. Article III, section 2, Florida Constitution, makes each house the sole judge of its members' qualifications, a stronger mandate than the federal constitution... . The constitution grants the sole power to judge these qualifications to the legislature in unequivocal terms. The courts of this state, therefore, have no jurisdiction to determine these constitutional qualifications.
397 So.2d at 667-68. Appellant points to a separate portion of the McPherson opinion as opening a door to judicial scrutiny of his claim. That holding should not determine this controversy, it is argued, because appellant's case falls within the McPherson's Court's observation that "[t]he statutory election contest has been interpreted as referring only to consideration of the balloting and counting process." 397 So.2d at 668. To reject this contention, we need only note that the cases cited by the McPherson Court in support of that proposition involved nonlegislative elections. See State ex rel. Peacock v. Latham, 125 Fla. 69, 169 So. 597 (1936) (county judge election); Farmer v. Carson, 110 Fla. 245, 148 So. 557 (1933) (election for clerk of the circuit court). Even the simple numbers involved in the "balloting and counting process," when related to legislative elections, are highly charged with political ramifications.
An examination of the statutory remedies under which appellant formulated his complaint and the procedural path which this case took indicate the wisdom of judicial deference to a legislative resolution in such a situation. Petitioner originally filed an election protest under section 102.166, Florida Statutes (1983), and an election contest under section 102.168, Florida Statutes (1983). Because the circuit court found no evidence of fraud, it dismissed the election protest. Because more than one county was involved in the contested election, the Okaloosa County circuit court then transferred the cause to its proper statutory forum, Leon County. § 102.1685, Fla. Stat. (1983).
The Leon County circuit court, prior to hearing the election contest on the merits, denied appellant's petition to restrain the Speaker of the House from swearing in appellee Ward. It also, however, ruled that such ceremony would not divest the circuit court of its jurisdiction over the election contest. While it later reversed the latter ruling and found no jurisdiction, evidence was admitted respecting the requisites of sections 102.168 (election contest) and 102.1682 (allowing a judgment of ouster to revoke the commission of one found to be wrongfully holding office).
Since the former section calls for a complaint "set[ting] forth the grounds on which the contestant intends to establish his right to such office," and the latter would actually allow the court to first evaluate the qualifications of and then unseat a member of the legislature, we find that application of these provisions to legislative election contests creates an impermissible risk of intrusion upon the legislative domain and disruption of that branch's internal processes. See McPherson v. Flynn.
While the wisdom of deferring to a legislative solution to this problem is clear, we share the circuit court's concern that appellant be provided some forum in which to air his legitimate grievances. While we neither possess nor desire power over the legislature to compel its consideration of appellant's claim, we note that Rule 15.2 of the House Rules allows the waiver of any of its rules upon an extraordinary majority vote. The legislature may well find that in light of appellant's possible reliance upon the circuit court's erroneous original finding of jurisdiction, as well as the importance of the issues involved, appellant is entitled to have his claim considered should he choose to bring it in the appropriate forum. That is solely a determination for the legislature to make.
The order of the circuit court dismissing appellant's complaint is affirmed.
It is so ordered.
*413 BOYD, C.J., and OVERTON, McDONALD, EHRLICH, SHAW and BARKETT, JJ., concur.